Walsh v. Walmart, 21486. Mr. Lopez. Good morning, Your Honors. I may please the court. My name is Juan Lopez and I represent the Secretary of Labor. I would like to reserve two minutes of my time. This case is about OSHA's proper application of the secure storage standard. Can you speak up just a little bit? There's also a button on the right side of the lectern. You can raise it a little higher. Give it a little pressure. Thank you. You stand in the middle. Great. Thank you. Sorry for that. I'm going to give you your eight minutes. All right. Thank you. This case is about OSHA's proper application of the secure storage standard, 29 CFR Section 1910.176B, to open an obvious hazard stemming from Walmart's storage of pallets in tiered racks, and when those pallets routinely slid through unblocked gaps in the rack beams and caused merchandise to come cascading down to the aisles. This provision is the only OSHA standard addressing storage of materials, and it directly is aimed at preventing injuries associated with items falling from great heights. Walmart says this is the first injury in ten years in this very plate in Jumpstown. That's right. The record does show that potentially this may be the only recorded injury, but that is irrelevant in this case in terms of establishing the violation. The OSHA act is prophylactic in nature, and so it's aimed at preventing the very first accident. What is it that the secretary wants? What do you want? The secretary wants the second circuit to vacate the commission's decision, interpreting erroneously the standard, and to also affirm the citation of the secretary. All right. So because in your brief you say reverse the order, so you actually want us to vacate the order? Because as I understand it, the majority of the commission just got to this tier issue. It did not get to the other issues. So it would go back. We would vacate the order if we were to agree with the secretary, and then it would go back to the commission for reevaluation? How does this work? Well, that's one potential option to remand with instructions to decide the remaining elements. Well, I'm asking you what you want. Yes. There's a narrow exception that the second circuit has discretion to decide the remaining issues. If there's no question as to the evidence. In this case, the record itself is clear. There are no real disputed facts. Rather, there's a dispute as to what to make and what the conclusions are to make of those facts. For example, there's no question that the managers at this warehouse knew that material would fall from the racks. There's no question that the material did, in fact, fall based on disclosure. When you say there's no question, you mean that that wasn't disputed before the commission? That's not disputed on appeal? It's not truly disputed. So I focus on adverbs there. You say it's not truly disputed. What does that mean? Well, the question of knowledge, which is part of one of the elements that the secretary has to establish to have the citation affirmed, requires that the employer knew. Now, there's no question that managers at this warehouse were aware, meaning that they were told and saw pallets being dislodged and storage materials falling from the racks. That, our position, establishes knowledge fair and square. They're saying that there was actually no knowledge as a legal matter, but the facts are there and the testimony to that effect is- Okay, that's preference number one. All right. What's preference number two? Alternatively, you could remand with instructions to the commission. The commission would issue a decision with the remaining elements and review the findings of the ALJ judge. The commission issued their decision. Two to one, is the commission still the same three people? No, it is not. It is not. It's got a different makeup at this time. So this is just like any agency case. Like in an immigration case, we vacate and remand a decision to the Board of Immigration Appeals. We say, you interpreted the statute, or in this case, you interpreted the regulation improperly. This is, of course, not what we're necessarily doing, but you're back up. That's right. So you sort of tell us about an exception where we could remand directly to the secretary? Could you explain that? No, the exception, so the normal course is that this court would remand, would vacate the commission's decision and remand for determination as to the remaining elements of the secretary. So we couldn't remand directly to the secretary. We can't give the secretary all the relief he seeks. Is that correct? You can provide the relief that we seek, meaning that- Well, the secretary is litigating before the commission right now. Right. That's how it came to us. Exactly. And you're saying we could send it back to the commission either in two ways. One, telling the commission, you got it backwards, the secretary wins. And that's, I assume, what you mean by reversal. That's a reversal. That is a reversal. That's what you asked for in your brief. That's your prime request. That's right. I understand your backup request. So are you asking for a reversal or a remand? That's what we're all- We're asking in the alternative. The number one issue is that the commission got it wrong in interpreting OSHA's standard. They missed the plain meaning of the standard altogether. In the alternative, if there remains any ambiguity as to the words of the standard, the secretary gets deference based on the purpose, the plain text of the standard, and also the history and structure. And that's what you're saying is, well, that's something we would consider now. That's something you could consider now. You're saying your backup request is that we vacate, we remand, we tell the commission you interpreted your regulation wrong. Now we're telling you what the regulation means. Presumably you want us to say, and it means what the secretary thinks it means. Now apply this to the facts. That's correct. And just to follow up on that, that's if we are uncomfortable with getting to the other two issues, for example, that you mentioned. That's right, Your Honor. And just to sort of tie this back up, the commission, in the event that this court decides that the commission improperly interpreted the standard and that the standard means what the secretary has interpreted it to mean, would send the case back. And the commission would do exactly what this court can do now, which is review the evidence before the administrative law judge and determine whether the elements were met. And so with the remainder of my primary time. Skip right to the chase is what you're saying. That's right. That's right. And so the commission's primary error was that it essentially ignored Kaiser v. Willkie, the Supreme Court's 2019 decision that held that courts must employ all traditional tools of interpretation in order to uncover the plain meaning of standard. In this case, all those tools, the plain text structure, the history of the standard, and its purpose, most of all, indicate that pallets that are stored on tier racking are, in fact, stored in tiers within the meaning of this particular standard. Alternatively, if there is still ambiguity based on the plain text of the standard, the secretary has interpreted the standard for a long time to mean that it broadly covers stores generally, but also that tiers do mean tiers in that anything that is arranged one above another. And so here the tiers of the rack themselves that hold the pallets are arranged one above another. And so that contemplates the tiers that the standard aims to secure. In fact, there was a picture in the record which makes clear what they look like. That's right. That's on page eight of our opening brief shows the- Well, yeah, I found a colored picture, which is not the one in the brief. It's DOL Exhibit 1. This was a picture taken by the OSHA officer. That's right, the compliance officer. Bright color. How should Walmart change or improve its racking system to abate the violation here? Your Honor, Walmart has already taken certain steps to abate this hazard with regards to the lower tiers of their racks, where they've installed cross beams that attach from the back to the front beams that hold up the pallet. And that keeps the pallets from sliding into the open gaps of these low- So the secretary is satisfied with that? That would satisfy it in terms of satisfying this particular standard. At this facility, or is it at more than one facility? This particular citation relates to the Johnstown facility for Walmart. But if Walmart wanted to take that step with respect to all of its warehouses, we would welcome that. And I yield the rest of my time. Thank you very much. Mr. Taylor, you should not take from our initial questions that it's futile to get up to that podium. It can't have been fun though, listening to us discussing what remedy we could give the plaintiff. Go ahead. Good morning. May I please the court? My name is Ron Taylor. I'm counsel for the appellee in this case, Walmart. Let me start by making one thing clear, and that is that the government's suggestion that the facts are not disputed could not be further from the truth. It's also not to be disputed sincerely that the government's argument about the theory of its violation here is, as the court in the general dynamics case cited by the government, is all over the map. And, in fact, what they are asserting is not a violation of the standard as it is written, but a violation of a standard that the secretary wishes it had written. Why is it a violation of the standard? Tell me why. There are two primary reasons, Your Honor. The standard itself contains two sentences. The review commission correctly interpreted the first sentences having no meaning. If we disagree with that, though, it would be the basis of our ruling, wouldn't it? If we say when the standard says there shouldn't be danger, that is not just a precatory language but part of the statute, part of the regulation. Well, Your Honor, the second aspect of the review commission's reasoning was that even if it wasn't precatory or hortatory, it is so vague as to preclude anybody of reasonable intelligence from understanding what the obligations are. For example, if I were to take a stack of materials and place them in front of an exit door, that would create a hazard. But that's regulated by another standard relating to access and egress. If I were to place big reams of paper next to a blast furnace, that would create another hazard of flammability. So the point here is that shall not create a hazard does not tell anybody how to comply. Well, the next sentence makes it clear. Well, that's what we get to. And there, Your Honor, the review commission... It's the next part that we're moving. The next part is really the applicable part. The government argues that the first one is sufficient. I think under the cases cited in our briefs, that's clearly not the case. So why don't we get to the next part? Thank you, Your Honor. The second one talks about materials stored in tiers. And here the government ignores the language. It talks about bundles, cases, bags that are stored in tiers so that they will be secure against sliding or collapse. Do we have to agree with you, do we have to take the position that the Secretary's interpretation of the word tiers is unreasonable? That would be one reason, Your Honor. But even if it were reasonable... So let me ask the question again. Okay. In order for you to prevail, do we have to agree with you that the Secretary's interpretation of the word tiers is unreasonable? No, Your Honor. Under the Supreme Court case law, Kaiser, et cetera, even if it were reasonable, if it creates an unfair surprise to the litigants, then it would not be entitled to any deference. And that's exactly what happened here. Okay, but if we back up, I'm sure I understand your point there. But if we back up to, I guess, the first stage, Kaiser, which is if the language is unambiguous, right? Correct. Let's just get to what I think is the heart of the matter. Well, actually, let me ask first a procedural question. If we were to agree with the Secretary that the word tier includes the tiers at Yankee Stadium, and I bought a seat in the second tier or the third tier, and they're not literally one seat sitting on top of another seat, but they're in rows, and we agree that the word tier is more expansive and can include the shelving, would you agree that in that situation the remedy that we should grant would be a remand to the commission to rethink its ruling in light of our interpretation, our contrary interpretation? And, Your Honor, to address the other issues raised by Walmart that were not addressed by the review commission. Right, and that would be your view. And then they can figure out how to apply that to the facts. Correct. So, okay, that's helpful. Would you just then get right to the meaning of the word tier? Because I'll just tell you right now, as I think I made it obvious with the Yankee Stadium reference, I don't know if they call them tiers or loges or whatever, but the first time I hear the word tier, the first thing I think of is baseball stadiums, football stadiums, and theaters, and those are not things that are literally all stacked one upon the other physically in layers. They are rows that are independently supported by some other structure. So why? I don't understand where the commission got this notion that a tier is limited to things that physically sit on one another. Because of the language of the standard itself, Your Honor, only by reference to the remaining words in the standard can you understand what tier means, and that is bags, containers, bundles, et cetera. Well, those can be stored on shelves, though, right? Right. But the operative thing is to protect them from sliding or collapse, they need to be blocked, stacked, interlocked. We have evidence that something that was on a shelf could slip and fall and not be stable or secure against sliding or collapse. I mean, here we have something that demonstrates that even when you're on a shelf,  But, Your Honor, that requires a reading of the standard that is inconsistent with the language of the standard itself. That's what I'm saying. So what language? If you're talking about the stable and secure, what I'm saying, I'm suggesting, is that language doesn't seem to militate against a shelf interpretation of tier. So what is the language? Is it the stacked, because you can stack things on shelves, blocked, which I assume means preventing things from falling off, whether falling off each other or falling off shelves? Is it the interlocked, limited in height? That can happen to shelves. What is the language here, in addition to the word tier, that in your view is suggestive of things stacked on one another and inconsistent with things that sit on a shelf? Well, if I knocked over a shelf, I could have a single book on it and it would fall on me. Well, it depends on how many books are on the shelf. No, I'm serious. No, I don't disagree with you. I mean, you can knock one pallet off the shelf. You could knock them all off the shelf. But the review commission correctly found that the pallets themselves, that's like the shelf. And they did not find that the pallets were stored. And, again, the language here, as written, Well, but there is a shelf. I thought there was literally a shelf. It's a couple cross beams. There's two cross beams. You ought to have more cross beams because you only have two. You can fall in between. So I know that the bundles were sitting on pallets were sitting on shelves. But I guess I'm not following. Well, there's a couple issues here, Your Honor, if I may, and I don't mean to digress. First of all, the case that was tried by the secretary related not so much to the storage. There's no evidence regarding how any of the material on the pallet was actually arranged. Rather, they focused on the pallets sitting on these two cross beams, which they admit most employers in the entire United States do. I'm sorry. You're getting away from tears. Stop for a second. Whoever has the phone, raise your hand. I think it's outside. Can you? Please.  I'm sorry. I'm not trying to get away from the question, Your Honor. But I am trying to put it in the context of the unenforceability argument because it requires an interpretation of what the secretary is like. The secretary alleges that the only time the hazard exists is when items are placed into or removed from the racking system. There's no evidence that anything has ever fallen other than at that time. And one of the arguments that Walmart made below and that the review commission implicitly accepted was that putting stuff into storage and taking stuff out of storage is not in storage. There's no evidence. I'm not seeing how this is going to tie back to the question of tears. I understand this is a separate argument. You may very well have. How does this relate to the definition of tear? Well, Your Honor, I would argue that the review commission, they looked at the word tear, and the most common definition is layered or placed on top of. And also, if you look at the other word that the review commission looked at. Why is that the most common? I thought it would also include rose. Why are we taking one word and saying that's more common? I mean, to tell you frankly, I looked at other dictionaries at the time, and they, you know, I think it was like from the 1960s. And, you know, the American Heritage Dictionary from 1969 defines a tear as one of a series of rows placed one above another. Concise Oxford Dictionary of Current English Usage, 1976. A tear is a row or rank, especially one of several, placed one above another, as in a theater. One of several units of a structure placed one above another. You know, it goes on. I'm trying to get where this restrictive definition comes from. I think it comes, Your Honor, from the language of the standard itself. Right, so which language? Okay, must be stacked, flocked, interlocked, and limited in height. So, again, let's take each of those. What about each of those words? This is where I was going before. Is consistent only with the notion of things stacked on one another and not in shelves. So, for example, I stack things on bookshelves. So why is that inconsistent with applying the word tear to a shelving unit? Blocked. I assume blocked means preventing something from falling off. Well, you put little bookends on books. For example, you're blocking something or you're putting something in front so things don't fall off. What about these terms is inconsistent with the notion of rows that are not physically stacked one upon the other? Any one of those words. Well, they're all used in the conjunctive, not the disjunct. Yeah, what's the problem with all of those? I guess I'm saying all of those words seem to work for me if I'm talking about rows of shelves in a warehouse. What about those words can't apply to rows of shelves in a warehouse? Which of those words? Well, Your Honor, if we accept that it's to some degree ambiguous, the point is that the agency has allowed the racking system to develop to the point where it is an industry standard. Its own guidance uses racking as an alternative to the items in the standard, which is exactly what it has here. Blocking is not referred to physically barricading or putting a barrier up. They use block as chalking, as chalking a tire, chalking a keg, chalking cylindrical items to prevent them from rolling or spreading or things like that. Okay, so how is that consistent with layers of things and inconsistent with things stacked on shelves? Because if it is inconsistent, that's, I think, a good argument for your side. But if these words are equally applicable, whether you have shelves or not, then I don't see how the other language of the regulation cuts one way or the other. Do you see what I mean? I think so, Your Honor. And again, I think Wal-Mart's interpretation is that the only definition that makes sense is when you are layering things on top of one another. You brick layer them, use friction and like that to prevent the state from jiggling. Why? Why is it that the word tier implies only that definition and not the secretaries? Your Honor, I think it's the most. I'm sorry. Can you tell me maybe a better way to, maybe a different, sorry, a better way to ask the question is, what is Wal-Mart's view of the purpose of this particular regulation? I'm sorry, view of the purpose? What is Wal-Mart's view of the purpose of this regulation? The purpose is respect to, and this is consistent with what is in OSHA's guidance, that when stacking or piling materials, that it be stacked or piled in such a way that it is not susceptible to collapse or sliding. You do that by interlocking it, by limiting it in height, and all the cases cited by. Why is the secretary's interpretation, understanding that it differs from Wal-Mart's interpretation, not consistent with that purpose? Well, Your Honor, the problem is, and as we pointed out in our brief, there's no real special expertise because of the nature of the way this was done. No, but that's a, so my question is actually in one sense easy, in another sense a little harder maybe. But why is the secretary's interpretation, understanding that it differs from Wal-Mart's, not consistent with the purpose that you just described? Because it would be an unfair surprise. So it comes down, and you answered the first and second question, it comes down to unfair surprise in your view, fundamental. That's a big part of it. You might argue that there's some ambiguity, you think it's clear, but you acknowledge that there might be some ambiguity. It comes down to unfair surprise. Right. Can you just briefly address that? Sure. Because I don't know how, other than the fact that the secretary has got this interpretation that's consistent with the purpose, how is that unfair surprise? Well, Your Honor, it's shown most fundamentally, leaving aside the secretary's own guidance, shown most fundamentally by the existence of what the secretary has acknowledged is an industry standard. These racks are specced by the Grocery Manufacturers Association, by other people, and employers all across the country utilize them. So your friend, on behalf of the secretary, said that at least with respect to this facility, Wal-Mart has already undertaken a change to, as I understand it, not as I understand it, I'm accepting the representation for now. And is that right? The only change that they've done is they've continued to enforce the 20-foot rule. They haven't put bracing on the lower shelves? The bracing on the lower shelves is for a different purpose. So there's the two tiers that are on the very bottom, the 10 and the 20 slots, as they appear in the record. And the reason that they put it in the 20 slot, which is the one right above the one on the floor, is so that when people pull an empty pallet out, it won't swing forward and hit them. So this becomes a way to help them slide the pallet all the way out of the racking system. And that was not custom. That was something that Wal-Mart did to prevent injury to its associates when they were removing pallets. And they had to order those poles and put them in especially. And the suggestion, to the extent it was one, I hope I answered your question, Your Honor. I thought opposing counsel told us that in response to this event, the hurting of the picker, the order filler, that Wal-Mart changed the configuration of the racks and tiers in the Johnstown facility. That's not correct, Your Honor. There's a dispute about that, too. It's a very significant issue because of the repeat violation potential. If Wal-Mart doesn't change it, not just in this warehouse, but for all warehouses across the United States, and if other employers don't similarly get rid of the industry standard rackings and fix them themselves, all of them are subject to repeat citations or citations for failure to properly store. And it's a pretty significant thing because, as Your Honor noted at the very beginning of this, Wal-Mart in this one facility alone moves over 2 million pallets a year. And in over 10 years, moving 2 million a year, this is the only time an individual has ever struck by anything. But the record indicated that the managers knew that occasionally things fell into the aisles, and occasionally people were hurt, but no one made complaints like this one person because she had a more serious injury. That's not entirely accurate, I believe, Your Honor. What the manager said is that, and it shows up in three places in the joint appendix, JA 28, 74, and 92, that nothing falls except when material is being put in or taken out of. They don't fall spontaneously. And so what they understand is that's the point in our brief, Your Honor, it's about a different standard that would apply the 1910-178, which refers to the safe operation of what's referred to as powered industrial trucks, forklifts, and things like this, which has requirements in 1910-178L about certifying drivers, teaching them how to stack and unstack with the material, and also to be aware of hazards relating to pedestrian traffic. That's the purpose of Walmart's 20-foot rule, and that's the only thing they understood. And the last point I know I've overstated. Actually, I have a question for you, so it may not be your last point. Okay. What do you think you wanted to make? I'm trying not to overstay my welcome, Your Honor. Thank you. Now, go ahead. Go ahead. Make the point you were planning. Okay. My point here is that in its reply brief, the Secretary tried to distinguish the Philadelphia-Bethlehem-New England case by saying that this was a rare occasion. In fact, it's the only time after millions and millions and millions of pallets anybody's ever been struck. But their argument doesn't distinguish that case. Actually, it reaffirms it, which establishes another reason why the Review Commission's decision should be affirmed, because it happened one time. That qualifies as rare, I think, when you have over 10 million pallets. And it only happened when the associate violated the work rules, which Ms. Saltzman was found to have done, and there's no dispute that she had violated the 20-foot rule, which is designed to protect people while they are putting things into and out of storage, which goes back to Walmart's fundamental applicability position. So I'm sorry to keep you. We've kept you well past your time. I'm happy to answer your questions, Your Honor. Could I ask you, going back to your point about the unfair surprise, what do you make of the OSHA guidance cited by the government on page 30 of their brief? These OSHA publications that refer to bound material should be stacked, placed on racks, blocked, interlocked, or otherwise secured to prevent it from sliding, falling, or collapsing. So in other words, guidance that OSHA has published that seems to fairly closely, but not perfectly, track the regulation we've been citing. But in the course of paraphrasing it, refers to racks, placed on racks. So it seems to be telling people how to apply, I can't remember this long, number of the regulation we're talking about, but putting it in the context of racks. And I'm wondering, since this has been published, at least the instances 1998 and 2002, what do you make of how those notices fit into your argument that it would constitute unfair surprise for warehouse owners like Walmart to now be told, wait a minute, tiers include racks or shelves? Sure, Your Honor. Well, there was an important word in the language that you read, and that was the word or. Our understanding, Walmart's position, is that that guidance actually posits racking as an alternative to the other things listed there because of the use of the word or. And that, Your Honor, is consistent with the other language in the standard where it talks about stacking and piling. For example, in the introductory section, what precautions should workers, must workers take, it talks about considered factors such as the material's height and weight, how accessible the stored materials are to, and the condition of the containers where the materials are being stored when stacking and piling materials. And you go on, Your Honor, block the bottom tiers of drums and keep them from rolling. Place plank sheets of plywood, dunnage, or pallets between each tier of drums, barrels, and kegs. Chalk the bottom tier of drums when stacking two or more. Stack and block poles as well as structural steel, bar stock, and other cylindrical measures to prevent spreading or tilting unless they are in racks. Those are other regulations, but you're saying those are the or. Well, I know, I was quoted from two different ones, but I guess I understand your argument. From the ones I quoted, the use of or suggests the blocking and stacking, or you could do something else that's not in the regulation that would also be fine, using shelves. And then you wouldn't need to get to the chalks and blocks. And then you have these other regulations you're citing, which are all relating to things like pipes that are all obviously stacked. And, Your Honor, I was actually reading from the 2002 version of that very guidance. The 1998 version is essentially identical. Just as a housekeeping matter, Mr. Taylor, and then we will truly let you go. Wal-Mart disputes the three remaining elements, that is, that the employees were exposed to or had access to the conditions. Or that Wal-Mart knew. Okay. You dispute everything else. Did you dispute that in front of the commission? The very last argument of our brief, we argued that it should also be denied because there was, we've argued applicability. We've talked quite a bit about that today. We also argued that there was no exposure to a hazard within the meaning of the standard and no knowledge on the part of Wal-Mart. What Wal-Mart may have known is that sometimes things fall when people are placing it into or out of storage. But not when there's a hazard. Mr. Rimmer testified, and this is it, Joint Appendix 92, that nothing had ever fallen when it was just sitting on the racks. Vibrations, earthquakes, or anything. Thank you very much. Thank you, Your Honors. Mr. Lopez. Mr. Lopez, the counsel for Wal-Mart just told us that the end of the world is nigh. Because if they lose this case, they have to go throughout the country and change everything that they've always believed in. Tell me if that's correct. I can't speak to what they'd have to do throughout the country, just only with respect to the citation and this facility. OSHA has not inspected all of the Wal-Mart warehouses throughout the country, so it's hard for me to say that necessarily. But with respect to tiered racks at this Johnstown facility, we submit that the hazards, which the regulation are directly aimed at addressing, are present by the fact that pallets are stored on tiered racks, which routinely, based on operator error or things of that nature, get knocked over, spilling merchandise, and in this case, injuring employees. Wal-Mart says that its railing system is widely used in the warehousing industry. Yes. Not just Wal-Mart, but throughout the warehousing industry. Is that correct? Well, one point of clarification. Council for Wal-Mart mentioned that we've acknowledged that they use industry-compliant racking. We've done no such thing. We've disputed that they presented sufficient evidence to make it clear that their racking is industry standard. All that aside, it's irrelevant. I didn't quite ask about industry standard. I just asked a question, which was it says the railing system is widely used in the warehousing industry. Is that correct? To your knowledge. To my knowledge, I actually don't have sufficient knowledge to say whether it's widely used, this idea of using just two rails to support a pallet with only three inches of overhang. I have no knowledge, and there's nothing in the record to indicate that that's widely used in the warehouse industry. But the point about using industry-compliant racks, that's kind of been disputed in the record. And another point that I would like to just clarify is we've indicated throughout the proceedings, even before this court, that Wal-Mart, before OSHA ever showed up, has bracing in the first two tiers of the racks. Not that they changed after the accident to make that the case. So that's another point of clarification. Also noted based on the questioning, the court is struggling with understanding how the commission came to this particular interpretation. And the reason for that is it literally came from thin air. They looked at the one definition. That's what came from, thin air. Right. So they looked at the one dictionary definition and cherry-picked one word of the definition of tiers, and for that added interpretive clause of that tiers require nothing in between, when in fact that's nowhere in any of OSHA's guidance or the dictionary definitions. They used the wedding cake as an example. That's right. And even in the example of wedding cakes, most wedding cakes have things between the layers of the cakes, such as frosting or dowels and things of that nature. But just from a safety perspective, it makes no sense to, as the commission held in this case, to conclude that this standard somehow plainly excludes pallets stored in the way that Walmart had them in this case with tiered racking. They're susceptible to falling, whether they're directly stacked on top of one another or in tiered racking. We have the benefit of your arguments. Thank you very much. Thank you very much. Thank you.